### BROWN *v.* FROST *et al.*

ON mortgage sales, where it is certain that the property will produce sufficient in any mode of division to pay the complainant, the master should pursue the instructions and wishes of the owner ; and the mortgagee can only demand that the usual terms of sale, as to time of payment, &c., be not departed from, without special reasons.

As between mortgagor and mortgagee, the former is not barred from redemption until the purchase by a mortgagee is consummated, and the deed delivered ; and a tender prior thereto will save the right. But a different rule prevails where a stranger buys.

Where a mortgagee purchases and then mortgages, and the former mortgagor files a bill to redeem, which is allowed him, he must look to the rights of the last mortgagee in applying the redemption money.

BILL to redeem.

June 11, 12.

A suit had been instituted upon two bonds and mortgages, given by Hannah Brown, the present complainant ; one to the defendant Edmund Frost, and Messrs. Carmans' for five thousand dollars ; and the other to the Carmans, alone, for four thousand dollars. Each was dated the twenty-eighth day of April, one thousand eight hundred and thirty-one. On the eighth day of January, one thousand eight hundred and thirty-three, a decretal order for the sale of the premises was entered in that suit. Edmund Frost and the other defendants in this suit were there complainants ; and Hannah Brown, the present complainant, was defendant. The decree was in the usual form ; and on the second day of March, one thousand eight hundred and thirty-three, the premises were sold, and purchased for the benefit of the present complainant, by Hezekiah Chase,

for the sum of ten thousand three hundred and fifty dollars.

The terms of the sale were so far complied with as that
the required deposite and the sum of four thousand three
hundred and thirty-three dollars and seventy-nine cents
was paid to the complainants, on account of the sum due
them ; and the costs were also paid.   Those terms were,
that ten per cent. should be paid down and the residue on
the first of May ensuing with interest.   The balance of
the purchase money not being paid, the court was applied
to for a resale ; and an order to that effect was made on
tenth day of February, one thousand eight hundred and
thirty-four.   Mr. R. Reid appeared as counsel for Mrs.
Brown, the present complainant and then defendant, and
consented to it.

The property was advertised for a resale, under the
order, to take place on the twenty-ninth of March, in the
same year.

It is to be noticed, that there were five different parcels
of property included in the decree of sale ; and only the
first described one was put up at the resale and sold.   It
consisted of over fifty-one acres ; and was struck down to
Mr. Reed for six thousand and six hundred dollars.   The
other material facts in the cause are adverted to in the
opinion of the court.

Mr. *Sherwood* and Mr. *Soper*, for the complainant.

Mr. *Sandford*, for the defendants.

July 1.        THE ASSISTANT VICE-CHANCELLOR :—The equity of
the case first depends upon the proceedings on the day of
the sale.   There was at that time a great panic in the commercial world ; and it was excessively difficult to raise
money.

I do not consider myself at liberty to assume, that at the
time of the interview with the master in the city of New-
York, on the morning of the sale, Reed knew what was
the actual amount due.   Certainly the impression left from

the testimony of the master is, that he did know it; and it would be singular that an agent should have been ignorant of so important a fact on the eve of a sale.

Still this is not distinctly in proof; and then the warning of the master to be prepared with bankable bills to meet the deposite, does not amount to a warning that he must come prepared with $660 or thereabouts. It also appears that at the time of sale Reed inquired what was the amount due.

With respect to the instructions given by the complainant, and shown to the master, I consider, that he was under an obligation to pursue them, unless plainly impracticable. A master, in executing a decree of sale, should first be satisfied whether the premises are sufficient to pay the complainant in full. If this is doubtful, he should regard his instructions in preference, though not exclusively. But if there is no question that the complainant will be satisfied in full, whatever be the mode of sale or of division into parcels, the master should pursue the instructions or wishes of the owner, with little respect to those of the complainant. All that the latter in such case has a right to demand is, that the ordinary terms of sale, as to a deposite and the period of completion, are not departed from, without very special reasons.

The agent did not do justice to the master when he postponed acquainting him with his instructions, and settling the mode of sale, until about an hour before the time when it was necessary to leave the city; and from the omission to give the map in evidence, I cannot say whether a more careful examination might not have convinced the master, that the division requested by Mrs. Brown was easy and judicious.

At the sale, the premises being struck down to Reed for $6,600, he tendered payment of about $500 on account of the deposite, and a check upon the Greenwich Bank for the balance. This being declined, he asked for time to go to Wall-street, or the bank, (which, does not clearly appear,) to get the money. At that time the check upon the bank was perfectly good.

It is also to be observed, that the master applied to the solicitor of the complainant as to the sufficiency of the check of Reed. The observation of the solicitor discredited it, and upon a ground which it appears was not justified by the actual facts ; though the solicitor had very naturally imbibed an unfavorable impression.

The terms of sale required a deposite of ten per cent. to be paid forthwith. Whatever might have been the case, had a stranger bought the property when it was again set up, the question is wholly different when the mortgagee becomes the purchaser. A master must undoubtedly possess a discretion, whether he will accept a check in lieu of money ; and even if this discretion is arbitrarily and unreasonably exercised, much difficulty may exist when a stranger becomes the purchaser upon the subsequent sale. But a distinction is prevalent in many cases between such a purchaser and the mortgagee.

In all these transactions there attaches nothing of impropriety to the conduct of the solicitor or the master. The latter can at the utmost be only regarded as overstrict.

From all these circumstances, the conclusion is inevitable that this sale would have been set aside, and Mrs. Brown let in, or a resale ordered, had an application been made in the suit before the period for completing the purchase expired. The case of *Collier* v. *Whipple*, (13 *Wendell*, 224,) is abundant authority for this.

The deed, however, was delivered, and it is said the report of sale was confirmed, before the bill in this cause was filed, which was on the 1st of May, 1834. I do not find any evidence of the time of the confirmation of the report.

I do not deem it necessary, however, to enter upon the question, whether the neglect to take measures in that suit would, under the circumstances, preclude this bill, as my decision will be placed upon another ground. The case of *Moore* v. *Battie*, (1 *Eden's Rep.* 273,) is however very strong in the complainant's favor upon that point.

In my opinion, there was a sufficient tender of the full amount due upon the mortgage and decree, prior to the

acquisition by Frost of the legal character of purchaser. Frost may have been, for various purposes, a purchaser in the view of a court of equity, from the day of sale; but he had not been clothed with the legal title.

It appears also from Mr. Wetmore's testimony, that in February previous to the sale, all the other complainants in the suit directed him to pay the monies over to Mr. Frost. It is true Frost gave orders to Mr. Watkins and to Mr. Graham, upon this fund, covering the whole amount. But his responsibility upon the orders continued, and his situation as mortgagee remained unchanged.

On the 8th day of April, 1834, the deed was delivered to Frost, and the consideration money paid. At the time of Frost's getting the deed, Chase was at the master's office, and said that Reed was coming with the whole amount. The actual delivery of the deed was prior to twelve o'clock; probably about eleven.

It is clearly proven that on that day, and it would seem between five and six o'clock in the afternoon, Reed tendered the whole amount in six bills of the National Bank, of $1,000 each, a bill of five hundred dollars, and some smaller bills. This sum was sufficient to cover the whole amount due for principal, interest and costs.

In a case of this character, I consider the court justified in putting the most strict construction upon the contract of sale. It is certain that Frost would not have been in default, had he completed his purchase at or after the latest hour at which Reed is stated to have applied to pay the amount. It is true, that ten days of 24 hours each expired shortly after twelve o'clock on the eighth of April. But Frost had the full day to complete his purchase, and it is equitable that the same rule should be applied to an application and tender to pay, so as to afford the foundation of a bill to redeem.

The master was sufficiently the agent of the defendant Frost, to make the proffer of payment to him equivalent to a proffer to Frost himself. There is evidence sufficient to show an honest intention to pay the amount. The ten per cent. was proffered on the day after the sale. The

money to pay the debt in full, was obtained for the express purpose of discharging it, not for the mockery of a tender to gain time.

Looking to the great indulgence allowed in England to a mortgagee upon a bill of foreclosure; how large a time is at first allowed, and how easily an extension of it is procured, I believe that it may be stated, as a rule of our own court, that a mortgagor shall not be barred from redemption, until the purchase by a mortgagee is consummated—the deed delivered, and the report confirmed. A tender prior to this time, will save the right. Where a third person is the purchaser, a different rule will be applicable. (See *Edwards* v. *Cunliff*, 1 *Mad. Rep.* 287.)

It is in evidence, that a mortgage was given by the defendant upon the premises. If this was prior to the filing of the bill, the complainant must look to the rights of the mortgagee, in applying the redemption money.

There must be a reference to a master, to ascertain what is due to the defendant Frost, for principal, interest and costs upon the foot of the decree of foreclosure, dated the 8th day of January, 1833, in the cause of *Frost and others* v. *Brown;* also an account of the rents and profits received by the defendant, or which, with ordinary diligence, might have been received by him; or if the defendant was in actual possession of the premises, then to ascertain what would be a reasonable occupation rent for the same, the master to make all just allowances for repairs, taxes and necessary disbursements in and about such premises; and also to ascertain the value of all useful and permanent improvements made by the defendant, and to state the balance which upon such accounting shall be found due. Such amount to be paid by the complainant with the costs of this suit to be taxed, within ninety days after the confirmation of such report, upon service of a copy thereof, and of the decree; and in default of such payment, the complainant's bill to be dismissed with costs, which dismissal shall be and operate as a final bar to all benefit and right of redemption of the complainant, his heirs and assigns, in and to such premises, and shall be equivalent to a decree

of foreclosure of the same, and it may be made part of such ·decree, that the complainant, upon default being made as aforesaid, do release and convey all his right and interest in and to such premises; but such release shall not be deemed necessary to perfect the title of the said defendant Frost. And in case the amount as aforesaid be duly paid, then that the defendant Frost convey, by instrument to be approved of by the master, the said premises to the complainant, and deliver up possession thereof.

The master to be at liberty to inquire whether any incumbrances created by the said E. Frost, since the 29th day of March, 1834, are now in force upon such premises, or any part thereof, and in whose favor; and application for further directions may be made to this court, as shall be found necessary.